Judge < wsley
delivered the opinion.
This is an appeal from a judgment rendered against Chiles and Pebles, in a traverse taken by them to an inquest had under the act regulating writs of forcible entries and detainers.
*341 Stephens was plaintiff in the warrant which issued fora forcible entry and detainer, and the inquest found Chiles a,;d Pebles guilty; and the couyt, after a Sliding by the jury in favor of Stephens, rendered judgment of restitution.
The questions made in the circuit court, ar.d presented for revision in this court, are contained in bills of exceptions taken to the opinion of the circuit judge.
ft appears that it; February, 1818, Stephens being in possession of a tract of land in the county of Montgomery, and claiming the same under an obligation which he held on Calk, sold to a certain Gatewood that part of the land contained within the lines which had been decreed to Calk, and gave his obligation to convey the same by general warranty deed to Gatewood; and at the same time contracted to sell to Gatewood the residue of the land contained in> the bond on Calk, but as it was involved in controversy, gave his obligation to convey the’same, or such part thereof as might be ultimately saved, to Gatewood, aud at the same time delivered possession of the whole tract to Gale-wood, stipulating that he should hold the same rent free, uniil the validity of the title should be determined. After this, in April, 1818, a certain Reed having obtained judgment in ejectment against Chiles and Pebles for the land, caused to be sued out a writ of habere facia? possessionem, and, in virtue thereof, the sheriff to whom it was directed, expelled Gatewood from the land, and delivered the possession to Reed, who thereupon, under a contract previously made with Chiles and Peblts, delivered possession to Ihss:. Glides and Pebles then leased the land to Gatewood, who entered into a written covenant to restore the possession to them on the 21st Dec. thereafter. Rut Gatewood appears not to have delivered (he possession to Chiles aud Stephens according to his covenant, and is proven to Imve continued to reside upon the place purchased by him of Stephens in February, 1819. About the first of February, lSI9, Gatewood gave to Chiles a written notice that he would, on a named day, deliver him the possession of the land leased. Chiles appears, however, not to have attended on the day named in the notice, arid-Gatewood proves that he then abandoned the possession of that part of the latid now in coolest. It also appears, that subsequent to the expiration of the lease by Chiles and Pe-bles to Gatewood, and before the abandonment by him, they hauled rails and made some alteration in the fence on *342 the land; but that they were never on the land after tb# abandonment of Gatewood, until after Farrow, under ai written authority from Stephens, bearing date in September J8t8, authorising him to transact his (Stephens’s) unfinished business in Montgomery county, entered upon the land and laid the foundation of a cabin, and put up the fence, enclosing about ten acres of land, and burnt a plant bed. It appears that Far'ow lived about a mile from the ]amisand after laying the foundation of the house, went homf, and, after two or three days, returned and repaired the fence and burnt the plant bed, declaring at the same .time that he entered holding the possession for Stephens, who was proven not to live in the siate. It was also proven, that Gatewood was advised by Farrow how to proceed in order to abandon ttie possession. Alter Farrow had entered upon the laud in the manner described, Chiles and Pebies, in the absence of Farrow, and whilst no person was on the land, entered, removed the foundation of the cabin laid by Farrow, and made alterations in the fence. It also appears that after the abatido: ment by Gatewood, Chiles and Pebies attempted to enter upon the land which Gate-wood retained the possession of, but Gatewood violently arid forcibly prevented them. This was, in substance, all the evidence admitted to go to the jury. An offer W3S made by Chiles and Pebies to introduce as evidence the record and proceedings in the ejectment brought by Heed against them, and under which the possession was takes from Gatewood, and the decree in a suit between ¿Stephens and Pebbs, in relation to the same land; but the court Would not permit any part of the record to be read, except the habere facias under which the possession was delivered.
After the evidence was gone through, the counsel of Chiles and Pebies moved the court to instruct the jury—
1st, That if they should believe from the evidence that Gatewood surrendered the possession to Chiles agreeably to bis notice, that Chiles and Pebies became thereby presently and immediatelv possessed of the premises, and that the entry of Farrow for Stephens was illegal and insufficient to maintain his warrant ef forcible entry and detainer.
¾. That Gatewood, as tenant, could not abandon the premises and leave them vacant; and that if the jury believed'he did abandon that part now in contest, the possession enured and presently passed to the lessors Chiles and Pc- *343 iMes, and that said Stephens could not enter adversely upon their actual possession without their consent.
3. That Gatewood could not surrender part of the pre* mises and retain the possession cf the residue; and if M e jury should believe that Gatewood retained the possession of any part, no part was vacant, so that Stephens could en* ter adversely or possess hiniselt lawfullv.
4. That the power of attorney from Stephens conferred no authority'to Farrow to enter, and that the entry of ⅜ arrow'for Stephei s gave Stephens no right to maintain a writ of forcible entry in his name.
5. That if the jury should find that Stephens, by his agent. Farrow, was not on the land when- Chiles and P< hies made the entry complained of, they ought to find against Stephens.
6. That the entry of Farrow, as detailed by the evidence, did not in point of fact vest the possession in Stephens. ,
Other instructions were asked for, but as thev are rather a recal culation of what had been asked for. than containing any new point, we have not deemed it materia! further to notice them.
The court refused to give the instructions asked for by Chiles and Stephens; and instructed the jury, that if Farrow, the agent of Stephens, had |efi the premises with au intention of abandonment, before (lie entry made by Chiles and Pebles, complained of in the warrant, the law w as for Febles and Chiles: But upon the whole case, instructed the jurv, if Gatewood had abandoned the possession of the land in coutest, and that harrow, as agent for Stephens, afterwards entered and became possessed thereof, and hud not abandoned the possession before Chiles arid Slephun entered.'but was possessed when they entered, Chiles and Stephens were guilty of the forcible 'entry complained of; and instructed the jury, that if Farrow, as agent, was actually possessed of the premises, it was immaterial in what Way that possession was abandoned, and that Chiles and Stephens had no right to enter forcibly upon their tenant, or any other person, obtaining the possession by the assent of the tenant. The court also instructed the jurv, that if Chiles and Pt b!< s entered on the part of the land which was in ti e possession of Gatewood, and not afterwards a-haudoned bv him, the entrv before the abandonment did Hot give them a possession in tact of the land in contest; *344 and (hat if (he agent of Stephens had abandoned 1 he pos* session before the entry of Chiles and Febles, they we-⅞ not guilty.
In warrants of forcible entry and de-tainer, the right of entry is not in issue; nothing but the actual possession can be tried, and it is immaterial how that possession was gained.
Exceptions were taken, as well to the court’s decision in excluding the record evidence, as in refusing and giving the instructions to the jury, and all the evidence spread upon the record. Under the instructions the jury found in favor of Stephens; and the counsel for Chiles and Pebles foot ed for a new trial, on the grounds of the verdict being against law and evidence; but their motion was overruled, and exceptions also taken to the court’s refusal.
This court perceives no solid objection to the decision of the court below in rejecting the record evidence. Those records contain nothing except that of the writ of habere facias and return, (which was permitted to be used in evidence) conducing in any manner to illustrate the fact of possession; and it has been repeatedly held, that in a proceeding for a forcible entry, under the act of this country, the title of entry is not properly (he subject of examinatioa or enquiry. To entitle Stephens to restitution, it was incumbent on him, barely, to prove, that a! the time Chiles and f ebles entered upon the land in contest, he was in fact possessed, and that their entry was without his assent Or that of bis agent. Upon these facts being proven, in the language of the act prescribing the remedy. Chiles and Pe-bles, whether they entered with or without title, must be declared guilty of a forcible entry, and compelled to restore the possession. At common law, a person having title of entry in lands possessed by another, was allowed to regain the possession by entry, and although he might be punished for any breacli of the peace committed in making iris entry, after having gained the possession, there was no means by which the possession could be restored to the person from whom the rightful owner obtained it. At an early period, however, the parliament of England 'perceiving the mischief which arose to the community by permitting a person, having right, by his own act, forcibly to redress an injury to bis possession, passed several statutes interdicting any person, having right, from forcibly entering upon the lands in the possession of others, and providing, in case of the force being found according to the directions of the statutes, for the restoration of the possession to the person from whom it was taken. In the adjudications of the English courts, upon those statutes, they have invariably re *345 pelled every attempt, by the person committing the force, to prevent a restoration of the possession by shewing hi.s title of entry. Whenever the force is found, restitution ' follows as a matter of course, let the right of entry be as it may: and that is done, because the makers of the statutes '■‘^supposed to have designed to oblige all persons to refer themselves to toe courts of justice for the decision of their claims to possession of land, and to restrain them from disturbing the public peace by such endeavors to right them? selves. Haw. P. Cr. Cii. 64, s. 47. In New York, where the English statutes appear to have been pretty generally adopted, a'similar course of decision exists. In 11 John R. it was held, that on an indictment fora forcible entry and detainer, the title to the premises does not come in question, but it is sufficient for the complainant to recover if be shews himself to have been in peaceable possession before the defendant’s entry.
jp the fen ant holds over.th*» land-hervir * of t e enmt, warrant.' ⅜
In this country our statute is not precisely the same as those of England, but it is snore favorable to the possessor, an ! declares that every entry, whether with or without farce, if it be made without the asseni or against the will of the person having tbs possession in fact, shall be deemed a forcible entry. We have, therefore, not referred to the English adjudications with a view to shew what description of cases comes within the provisions of the act of this country, but for the purpose of shewing that, in excluding an enquiry into the title, in cases of forcible entries, the decisions of this court are nut unsupported by precedent.— Nor can it be material how the possession, on which the entry is made, was obtained. If it be a possession in fact, by whatever means acquired, it is protected by the act, and those entering upon it are deemed guilty of a forcible entry. The act has made no distinction between rightful and wrongful possession; and it is plain from the circumstance of its having interdicted entries by those having right, it was not intended by the law makers to permit any description of persons to redress themselves by entry against the assent of (he person possessed. The landlord can, no /more than any other person, after the expiration of the Ilease, enter against the will of the tenant, if the tenant rafuses to restore the possession, the act has furnished a re-ynedy to the landlord; but in pursuing that remedy, he is not to he bis own judge, but must refer bis case to the tri burials of justice for decision. The landlord may have a *346 (¡t¡e 0f entry, but his having such title gives him no right to enter upon the possession in fact of another against the will of tbs possessor; and there is nothing in the act which places his claim to redress himself by his own act on different footing from any other person having the right of entry; and if he should enter, must be subj.-ct to the same consequences of others making forcible entries. After having entered, therefore, he cannot protect his possession by shewing that he was landlord, for that would be permitting an enquiry into his title of entry, and such an enquiry, we have seen, is inadmissible.
A ,ossess mn gainedby disseisen.wiil ⅛1 jpevent from main”1" taining lús warrant ag’st entry, but whoenterson wkluHitTiiT assent.
A general power amho-gent “to finish alt the setiFfTbesi ness”’auiiio-10 rises ti e a-gint to take fanrls,SSto °f which the principal has ’name’of principa!.
To the preceding part of this opinion Judge Mills dissents.
If, then, we are correct in the preceding remarks, it results, that the records were not only properly rejected, but that the circuit court must also have been correct in many of its decisions on the motion to instruct. It was certainly correct in refusing the first instruction asked; for that seems to have been predicated upon the supposition that, P'arro'^' the agenR obtained the possession illegally for Stephens, a writ of forcible entry cannot be maintained for a subsequent entry whilst in his possession.
And it is equally clear that the decision was correct on the second instruction asked; for that seems to be predi-caled upon the idea, that a possession gained by disseisen is !)0t s„c}j a possession as will authorise the possessor to main-a Wlat of forcible entry against those thereafter entering without his assent.
The decision on the third instruction asked for, is also correcti for that, although differently expressed, is predi-dated upon the same mistaken idea of the second.
The fourth instruction asked for, presents the question, as y1e 0f Farrow to enter for Stephens. The power of attorney ¡s certainly not as explicit as might be desired; but it confers upon Farrow general authority to ^ransact’ Stephens’s unfinished business. Stephens appears have contracted for the sale of the land to Gatewood, some months before the date of the power, and gave his ob-ligatioft fo convey on the contingency of his succeeding in sustaining his title to the land. After this contract, and before the date of the power, Gatewood appears to have bcen dispossessed by Chiles and Pebles. Under these cir-cucastances, it is most probable that it was designed, by Stephens, by empowering Farrow to transad his unfinished *347 (business, to authorise him to adopt any means, and take any steps he might deem advisable to regain the possession and investigate the title to the land in contest. Under this construction, therefore, if, in point of fact, Farroiv, as agent for Stephens, entered upon and took the possession, that possession must he considered the possession of Stephens, and as such sufficient to authorise the proceedings in his name.
There may be a possession in fact by a person not f.'Ct upon the land.
, Whether the warrant was in fact possessed, ⅛ ^fch should be left to the' jury.
rant and not i/anentr/in-to a part Whether the entry of a landlord into a part of the leased premises, but not in contest in the war-which wa enify ⅛ to the whole, mu®1 depend on the intention with which the entry was made, and must be left to the jury-
The fifth instruction was asked for, on the supposition, that to enable Stephens to maintain his writ, it was indispensably necessary that either himself or Farrow his agent should have been upon the land when Chiles and Febles entered. The faliicy of this idea will at once be perceived bv adverting to the decision of this court in the case of Brumfield vs. Reynolds, 4 Bibb, S88. In that case it was decided, that there may be a possession in fact by a person not in fact on the land.
. . The sixth instruction was asked for upon the supposition of the evidence not proving Stephens to have been in fact possessed. Whether, however, he was so possessed, was a question of fact for the jury to decide, and which the court properly left for their determination.
We think, iiovrever, the court erred in one of its instructions to the jury. The instruction to which we allude is that, where the court informed the jury, “that if Chiles and Febles entered on that part of the land which was in the possession of Gatewood, and not abandoned by him, the entry before the abandonment did not give them possession in fact of the land in contest.”
Whether, or not, their entry gave them possession of the land in contest, turns upon the intent with which it was made. Having leased the whole of the land to Gatewood, it is clear Gatevvood could not, thereafter, by abandoning part, preclude Chiles and Febles from regaining the posses _ sion of the whole. But in order to do so, by entry, the en try must be made with an intention of taking possession of the whole, and not a part only, instead, therefore, of the instruction which the court gave, it should have been hypo-thecated on the intention with which Chiles and I ebles entered; and as the intention is properly a question of fact, the fact of intention should have been left for the determination of the jury on the evidence.
Because, therefore, the court erred in its instructions, the judgment must be reversed with costs, and the cause re *348 manded tn the coun below, and further proceedings had noi inconsistent with this opinion.
Bibb and Hardin for plaintiff, Pope for defendant in error.
On rendering this opinion, Judge Mills delivered the following dissent:
The principal question involved in this case, and on which the instructrons of the court below rest, as a keystone, is, can the defendant in a writ of forcible entry and detainer be allowed to shew that the possession which the plaintiff demands bv it, was tortious or fraudulent, while the plaintiff held it? To sustain the remedy, the plaintjff must s' ew that he had the possession in fact at the date of the defendant’s entry complained of, ought the defendant then to bs permitted to shew that that possession, in fact, is fraudulent and wrongful, or that the plaintiff himself was the fit subject of a forcible entry and detainer in acquiring that possession? It is readily admitted that title cannot be enquired into; but it is equally true, that the title, the right of possession, and the bare possession, may each be separated from the other, and each may exist in separate hands. The possession itself, and indeed the right of possession, may be enquired into, without involving the mere right. Ami it is conceived there will be no difficulty in drawing the boundary line between them. Is it then a naked possession, without the right of possession, and even against the right of possession, which the'legislature meant, by the act in question, to restore? I conceive not. I would resort to every plausible construction before I would say that they meant not only to protect, but to redress wrong against right. In all suits, both at common law and in chancery, it is an universal principle in our code, that a plaintiff must entne with clean hands. Fraud once shewn, either in law or equity, vitiates every transaction, and the remedy is always refused to the guilty. Has the legislature, (hen, made this solitary exception, and shut the eyes of our courts against fraud, stealth and force, in this remedy? Have they placed ari estoppel against the proof of it, and declared that he who has been guilty shall have both his force and fraud sanctified by judicial decision, restoring him toihal which he ought neverto have bad? It is evident that the enirv made under a writ of habere facias pos-sessionem, or habere facias seisinum, may be, and almost al *349 ways is, “without the asset.I and against'the mil” of bim who at the timé lias the “possession in fact ” Can it be pretended that he can support ibis wrv? If be can, the legislature has, by one act, swept all rtmedjy by ejectment, Writ of right, or suit in equity, from existence. If he cao-tot, then it proves that the words ‘ any entry, with or without multitude of people, &c.” does not. mean any entry a*-gainst the will of the possessor io fact, and that a 'earona* bit; construction is to be applied tp the words, calculated to protect rightful possessors from violence and fraud It may be said that the case put, of entry with process of law, is an entry by the authority of law. Be it so. It alters not the force of the argument The law may make the entry; but still an'individual enters ‘ either with or without multitude of people, against the will, and without the assent of him who, ai the lime, holds possession in fact, and musl be literally included within the expressions‘“any entry’* against the possessor’s will. These considerations, with others which might be adduced, have induced me to conclude, that the reasonable construction of the act is, that the defendant ought to be permitted to shew the force and fraud of the plaintiff in acquiring the possession demanded, without bringing the strength of title against title; and that the decision of the circuit court is erroneous in excluding the force or fraud of the plaintiff, which the evidence coa-iiuced to establish, from the jury, by telling,them expressly that it was iinmatiriál whether the plaintiff acquired the possession, which he had lost, and which be demanded in the warrant, “eitiur by force or fraud,” and that notwithstanding then, il he had it at the entry of the defendant, Jie was entitled to its restoration.
I do not conceive that the English adjudications on their .statutes can have any bearing on the construction oí out, statute. They afford a remedy of a criminal character, and are prosecuted by indictment. Ours is a remedy purely civil But when they are resorted to, they furnish nothing that militates against this construction of ours. If tup prosecutor shewed a right to the possession, he was restored. If he failed lo do this, the defendant was punished by fine, and restitution was denied, as will be seen by consulting Hawkins’ Pleas of the crown, tit. Force, Ent. and Det. and Chitty’s Criminal code, same title Tbps so much of the remedy as ¡iff, riled civil redress was refused in favor of a wrongful claimant. In like mauner I conceive it ought to *350 be refused under our statute. — If such a plaintiff can sustain bis writ, I see no reason why the defendant may not turn round and bring a similar one .against him, and thus present the phenomenon of writ against writ, and judgment against judgment, and our courts be at one hour restoring to possession a person, which, at another, they had ousted by the same remedy? If these are to be the consequences resulting from the statute, it is certainly a fit subject of legislative amendment. They are considerations which induce this dissent from the opinion just rendered, so lar as gives construction to the act in question.