## LEVI CUMMINGS *vs.* EBENEZER KILPATRICK.

The act of 1822, in relation to the proceeding of unlawful detainer, (Hutch. Code, 813, Art. 7, § 3,) does not apply to the case of a vendee at execution sale, where the party in possession of the premises, or those under whom he claims, did not come into the possession originally as tenants to the defendant in the execution.

The proceeding of unlawful detainer was intended as a merely possessory remedy. Title is not involved in it, nor can a party be permitted to deduce his right of possession from his right of property in the premises.

The remedy by unlawful detainer is confined to cases in which the party in possession has originally entered under a title which gives only a temporary or defeasible estate, and which has expired; or where the relation between the plaintiff and the defendant may be considered in law that of landlord and tenant; as in the case of a tenant who holds over after the expiration of his lease, or of a vendee who goes into possession under an agreement to purchase, and, failing to comply, detains possession against the consent of the vendor, &c. It was never designed as a substitute, in all cases, for the action of ejectment.

*Rabe* v. *Fyler*, 10 S. & M. 441, cited and explained. Where the grantee of the landlord is the plaintiff in unlawful detainer, he is permitted to introduce the landlord's deed to himself, in connection with proof of the tenant's attornment to him, for the mere purpose of showing that he has succeeded to the rights of the landlord, and that the relation of landlord and tenant exists between the plaintiff and defendant. Proof of that relation cuts off all inquiry into the title of the plaintiff. Deeds may also be introduced to establish boundaries, or to show the extent of possession.

There are some cases in which parties who never had possession of land may recover in the proceeding of unlawful detainer. Such was the case of *Rabe* v. *Fyler*; and *semble*, that the heir of a landlord may maintain the action against the tenant of his ancestor.

ON appeal from the circuit court of Madison county; Hon. Hugh R. Miller, judge.

The facts of the case are sufficiently stated in the opinion of the court and the briefs of counsel.

*Wm. F. Stearns*, for appellant.

This was an action of unlawful detainer, instituted in Marshall county, by the defendant in error against the plaintiff in error.   The magistrates, upon the verdict of the jury, rendered a judgment against the defendant in error, who appealed to the circuit court of Marshall county, where another judgment was rendered against him, and he again appealed.

The material facts established by the proof are these.   That Kilpatrick, on the 20th day of December, 1837, recovered a *judgment in* Marshall circuit court, against Nelson, Chambers & Co., for $780.48 ;  that Nelson, Chambers & Co. on the 5th of March, 1838, conveyed the lands in controversy in this cause to James M. Ross, by whom they were conveyed, on the 23d of June, 1838, to William Dye.   The lands in question were levied on by the sheriff of Marshall county, by virtue of an execution issued upon Kilpatrick's judgment, on the 24th of May, 1839.   On the 2d day of April, 1849, the lands were sold under a writ of *venditioni exponas*, and Kilpatrick became the purchaser, and received a conveyance from the sheriff. One Byrn testified that he rented the lands in question to Cummings, but that he had no right to do so, except as the administrator of Dye.

Cummings, in the court below, demurred to the evidence, but the court held that the evidence was sufficient to sustain the action on the part of Kilpatrick ;  and in doing so, as I conceive, erred very much.   I contend that the judgment of the court below must be reversed for the following reasons :

1.  Because, under our statute, a purchaser at sheriff's sale is not entitled to obtain possession of lands by this summary proceeding.

2.  Because, even if this proceeding could be resorted to as a substitute for the action of ejectment, Kilpatrick, inasmuch as he did not show any title in Nelson, Chambers & Co. to the lands in question, nor any privity of estate between them and Cummings, did not prove sufficient to entitle him to recover in this case.

3.  Because the judgment of Kilpatrick, at the date of the sheriff's sale under which he claims, had lost its lien.

The first question is one which, so far as I have been able to learn, has never before been presented to this court. Doubtless, this cause might be decided without reference to that question; but, inasmuch as it is now directly presented, and its settlement is very important, it is hoped that the court will decide it, and thus silence the litigation that will otherwise grow out of the question if it be now left open.

The proceeding by unlawful detainer seems hitherto to have been regarded in this State as a merely possessory action, involving no question of title, and allowed only as between landlord and tenant, and vendor and vendee.

But it is now broadly contended by the counsel for the defendant in error, that unlawful detainer, when not barred by the limitation of three years, will lie wherever ejectment will lie. While they admit that the title is not the question in controversy, they insist that they have a right to introduce proof of title, and from the right of property to deduce the right of possession, as in ejectment. I do not think that the legislature ever designed that the statute (Hutch. Code, p. 813-817,) should have such a sweeping operation. If they did, they were certainly guilty of a gross absurdity when they provided, that the verdict and judgment, in cases of unlawful detainer, should not be held conclusive of the facts found, nor operate as a bar to any action of trespass, ejectment, or writ of right; whereas, if the statute be construed to give a possessory remedy merely, the provision I have adverted to seems reasonable and sensible. Besides, under the latter construction, few *questions* of difficulty could occur; while under the other it must follow that the nicest, most intricate and complicated questions that ever arise, would be left to the decision of a couple of Dogberrys.

I am aware that the case of *Allen* v. *Gibson*, 4 Rand. 468, is relied on by the opposing counsel, and that it seems to sustain their views; but the court, in that case, undertook to decide questions not presented by the record; and I care, therefore, very little for the grave *dictum* of Judge Green, intimating, in effect, that any party, who could maintain ejectment, was entitled to the remedy of unlawful detainer. That

was a case of a mortgagee against a mortgagor, after condition broken, and amounts to just about as much as the cases in this State, in which a vendor, after a rescission of the contract of purchase, has been allowed to recover possession of his land from his defaulting vendee, by the proceeding of unlawful detainer.

The case of *Rabe* v. *Fyler*, 10 S. & M. 440, was relied on by my opponents in the court below, and, I presume, will also be quoted by them here. In that case, Fyler was the assignee of the Agricultural Bank, the original landlord of Rabe, and it was properly permitted, therefore, that Fyler should read the deed from the bank to himself, so as to show that he had succeeded to the rights of the landlord. But I also rely upon that case to sustain me, when I say that title is not the foundation of the action of unlawful detainer.

Secondly. Kilpatrick did not prove that Nelson, Chambers & Co. had any title to the lands in controversy. In order, therefore, to entitle him to a recovery even in an action of ejectment, it would be incumbent on him to show a privity of estate between Nelson, Chambers & Co., and Cummings. His counsel insist that he has shown the requisite degree of privity by the testimony of R. H. Byrn. Byrn says he has no right to the possession of the land, except as the administrator of Dye, but he does not say that he rented the land to Cummings, as administrator of Dye. Conceding, however, for the argument, that he rented the land as administrator, is the requisite degree of privity thereby established? I insist that it is not; that an administrator, under our laws, can have nothing to do with the possession of the lands of his intestate, except in a single case, when he proceeds to finish and gather a growing crop. If the estate is insolvent, he can sell the land, under the orders of the probate court, but he has no right to take possession of it, or to rent it out; and if he does either, his acts are to be regarded as those of a stranger, and his tenant must be entitled to all the rights of a stranger, so far as third persons are concerned.

Thirdly. The lien of Kilpatrick's judgment, which was ren-

dered on the 20th of December, 1837, expired on the 24th of February, 1846. *Emanuel* v. *Jones,* 12 S. & M. 473 ; *Rupert* v. *Dantzler,* Ib. 697. The sale under which he claims did not take place until the 2d of April, 1849. The conveyance executed by Nelson, Chambers & Co. to Ross, on the 5th of March, 1838, cannot, therefore, be overreached by the judgment of Kilpatrick, although his execution was levied before the lien of his judgment expired.

For these reasons, I submit that the judgment of the court below should be reversed, and that this court, proceeding to render such a judgment as should have been rendered by the court below, should enter up a judgment in favor of the appellant.

*Watson & Craft,* for appellee.

The remedy of unlawful detainer is given by express statute, and exists in every case which falls within the provisions or terms of the statute giving the remedy. Hutch. Code, 813, art. 7.

The third section of this act declares, " If any shall enter, or shall have entered in a peaceable manner, into any lands or tenements, in case where such entry is lawful ; and after the expiration of his right, shall continue to hold the same against the consent of the party entitled to the possession, the party so entitled, whether as tenant of the freehold, tenant for years, or otherwise, shall be entitled to the like summary remedy at any time within three years after the possession shall so have been withheld from him against his consent."

The claim or right of appellee to the possession of said lands, as against appellant, accrued so recently as the 28th of April, 1849, and it is only since that date that appellant has held possession of said lands against the consent of appellee ; consequently, the remedy in question is not barred by lapse of time ; nor is it inappropriate for any other reason.

Appellant originally entered upon the said premises as tenant only of another, and by a title which gave him but a temporary or defeasable estate, and this title has been in no way strengthened or changed. His entry was peaceable and law-

ful, and if, as appellee insists, his right had expired, and he continued to hold "against the consent of the party entitled to the possession, the party so entitled, whether as tenant of the freehold, tenant for years, or otherwise, was entitled to the remedy adopted, at any time within three years after the possession shall so have been withheld from him against his consent." Hutch. Code, 813, sec. 3.

Now looking to the language of this act, is it not apparent, that, on the trial of this case, the only question for the decision of the court or jury was, as to the expiration of the right or title of appellant to the possession of said premises; and as to the existence or non-existence of a right on the part of the appellee to the possession thereof as against appellant, and the time when said right accrued?

The law, in its terms, certainly does give the summary remedy adopted, to any one entitled to the possession of lands or tenements, if he pursues it within three years of the period at which his right to the possession accrued. Against this construction of the act, nothing militates to the slightest degree but the incidental use of the word "restitution," in the form of the complaint prescribed; but the remedy is not given by the complaint, nor is the extent of it to be limited thus incidentally. The remedy in this case, is given by the 3d section of the act already quoted; and, moreover, "The charge to the jury, and the prescribed form of the verdict, preclude all other inquiries; but whether the defendant held against the consent of the plaintiff, when he exhibited his complaint; whether he had or had not so held for three years; and whether the plaintiff hath the right of possession. And if the jury find these facts for the plaintiff, and which they must do, if they appear, — no matter under what circumstances the defendant entered, or when, and no matter how the plaintiff's right of possession arose, — the statute peremptorily directs, that judgment be given for the plaintiff, not to be restored to the possession of the tenement, but to recover the possession of it; and that a writ of possession, not of restitution, be awarded." See *Allen* v. *Gibson*, 4 Rand. 468, 474 – 477. The statute of this State is a literal copy of the Virginia statute.

But Byrn's bill was filed more than two years after the passage of the limitation act of 1844, which contains the section relied upon on the other side. Had this limitation barred the lien of appellee's judgment, the bill of Byrn should have been sustained. The decision of this court on this bill necessarily involved the point now under consideration, and was favorable to appellee and against Dye's estate. And appellant coming in, in privity with Dye's estate, this decision is conclusive against him. *Mc Culloch et al.* v. *Markman,* Jan. Term, 1850, Opin. Book, 162.

It will be seen, that in the lifetime of Dye, appellee wished to sell under his judgment, but was prevented by a writ of error, and an injunction, which was not finally dissolved until July 18, 1846, so that by injunction appellee was prevented for more than two years after the passage of the limitation act of 1844, from selling under his judgment. Now was it competent for the legislature, even, thus to deprive appellee of his lien? The judgment lien was in the nature of a mortgage or a deed of trust. 6 How. 554 – 565; 7 How. S. C. U. S. Rep. 760.

So soon as the injunction was removed, which was in July, 1846, appellee again proceeds under his judgment, but is again arrested by Byrn, administrator of Dye. The court now decide that the judgment has priority over the deed to Dye, thus putting at rest, as between appellee and Dye, this question of priority; but now appellant, who was put in possession under Dye, by Dye's administrator, attempts to revive this question of precedency or loss of lien. What right has he to do this? By his disclaimer, he has even cut himself off from all privity with Dye's estate, and stands before the court upon a naked possession, under a right as tenant, which has ceased.

There are many cases in which, where a party is prevented from going forward under his judgment by legal restraint, time does not run against him. A plaintiff issues his execution, without a *scire facias*, after the lapse of twelve months, when he has been prevented from sooner doing so by appeal, writ of error, or injunction. And does not the language held by this court, in the case of *Wade* v. *Am. Colonization Society,*

7 S. & M. 698, apply here? Speaking of a twelvemonths' limitation, the court say, " If a statute have taken away their right to freedom, it has been against their best efforts, and those of their trustees," and was it not against the best efforts of appellee that he was prevented from selling under his judgment, within two years after the act of 1844? and was not the restraint imposed upon him unjust? And now can Dye, or any one claiming under him, take advantage of the wrong of Dye, and his heirs, and administrator, in preventing an earlier sale?

At the time of the passage of the limitation act of 1844, appellee's judgment lien had been carried into an execution lien, by actual levy. The act limits only judgment liens, and the provisions of this act this court certainly will not be disposed to extend by construction in the present case.

Had a judgment lien only existed at the time of the passage of the act, the act possibly might have attached; but as the lien was that of an execution, levied prior to the passage of the act, it is insisted that the case does not fall within the influence of the limitation in question. In the case of an actual levy, the property is considered as in the hands of the sheriff. *M' Gehe* v. *Handley et al.*, 5 How. 625. A sufficient levy on personal property is a satisfaction of the judgment, and a sufficient levy on real estate postpones the right to a second writ. After a levy on realty, the sheriff may complete the execution by sale after the return day. 4 Wheat. 503; 10 S. & M. 258, 259.

It is believed, however, that Byrn rightfully took possession of the premises as administrator of Dye. As against the heirs of Dye, his right was questionable; but they yielded to his claim, which, as to the rest of the world, was certainly good. In the case of *Williams* v. *Stratton*, 10 S. & M. 418, an administrator of an insolvent estate was sustained in his claim for rent, for the lands of his intestate. The decree below gave the administrator rents, and this decree was affirmed, as will be seen by reference to the transcript on file.

Appellant, as tenant of Byrn, went into possession. He is in this suit, in no better condition than he would have been,

10*

had he introduced proof of the tenancy between him and Byrn, and insisted that the title of Byrn, under which he held, was superior to that of appellee. The omission of appellant in this particular, was supplied by the proof of appellee, which established the priority between appellant and Byrn. This being established, the possession of appellant is but the possession of his landlord Byrn. 3 Peters, 43; 5 Ib. 484; 9 Yerg. 86; also *M' Culloch et al.* v. *Markman*, January Term, 1850, Opinion Book, p. 162.

Under these circumstances, the real question is, Is the title of appellee to possession, superior to that of Byrn? See 2 S. & M. 220, where it is decided, that proof of possession by tenant is proof of the landlord's possession; also 10 S. & M. 584. Whilst the controversy really involves a comparison of the relative claims of appellee and Byrn to possession, appellant, as the tenant of Byrn, was the proper party to be served with process. 2 S. & M. 225.

It was not necessary that appellee should show his title to be good as against the world. The respective titles of both appellant and appellee ran back to a common origin. Appellant went into possession under Byrn, who held under Dye, who held under Ross, who held under Nelson, Chambers & Co. This being the case, it was enough for appellee to show that the title of Nelson, Chambers & Co., was really in him. 10 S. & M. 327; 5 Ib. 470, 487, 488.

The judgment lien of appellee being older than the conveyance of his judgment debtors, Nelson, Chambers & Co. to Ross, under which appellant went into possession, the title acquired by appellee by the sheriff's deed, (unless, indeed, this judgment lien had been barred by the two years' limitation,) related back to the judgment, and extinguished all intermediate incumbrances. 1 Peters, 443; 6 How. 554, 556; 7 How. S. C. Rep. U. S. 760.

Mr. Justice SMITH delivered the opinion of the court.

This case comes before us by appeal, from the circuit court of Marshall. In its inception it was an action of unlawful detainer, instituted under the third section of the

statute 'concerning forcible entries and detainers. Hutch. Dig. 813.

On the trial of the issue in the circuit court, the defendant demurred to the evidence of the plaintiff. The court, upon the facts thus established by the demurrer, determined the issue in favor of the appellee; and judgment was accordingly entered for him.

The material facts, as they appear in the record, are as follows. Kilpatrick, the appellee, on the 20th of December, 1837, recovered judgment in an action of assumpsit, against Nelson, Chandler & Co.; from which an appeal was taken to this court, pending which, in 1838, Nelson, Chambers & Co. conveyed the land in controversy to Ross, who, on the 23d June thereafter, conveyed it to Dye. An execution issuing on Kilpatrick's judgment was levied on the land, May 24th, 1839. Dye enjoined the sale, and having died during the pendency of the injunction, the suit was revived in the name of his representative. The injunction was finally disposed of in this court in 1845. Byrn, Dye's administrator, took possession of the land, reported the estate insolvent, and preparatory to a sale of the decedent's estate under an order of the court of probate, filed his bill in order to remove the cloud resting upon the title thereof, arising out of appellee's judgment against Nelson, Chambers & Co.; also to enforce a sale under a *venditioni exponas*, sued out on said judgment.

Byrn rented the land in 1846 to the appellant, who remained in possession down to the time of the trial.

The bill filed by Byrn was dismissed on demurrer, and the land was sold at sheriff's sale on the 3d of May, 1849, when the appellee became the purchaser. After which, he instituted his action as above stated.

We shall notice first the question which is presented *in limine*; a determination of which may obviate the necessity of further inquiry.

The question is this, Does the statute referred to supply a remedy for the recovery of the possession of land, by a party claiming title thereto as the vendee at sheriff's sale?

If it do not, the proceedings were erroneous, and the judgment must be reversed.

By the recovery of his judgment, the appellee was invested with no right of property in or title to the land in controversy. The entire operation of the judgment was the creation of a lien upon the land. It vested in the appellee a right of satisfaction of his debt out of the lands of his judgment debtor, in exclusion of every lien or demand of inferior dignity or of junior date. Subject to this right, the debtors remained the owners of the fee, with the full power of disposition. Before the levy of the execution, the land was twice conveyed; and the last purchaser of the freehold died in the possession of the premises before any right of property or title was acquired by the appellee.

On the death of the tenant of the freehold, the land descended and vested in his heirs at law. Nine years had elapsed from the date of the conveyance to Ross to the date of the sale under which the appellee claims title, during which period the successive and undisputed owners of the freehold remained in possession of the land.

It is manifest, that if the remedy for an unlawful detainer is applicable to this case, it is equally applicable in all cases where the right of possession can be deduced from the right of property or title to the freehold.

In ejectment, nothing can be recovered but that for which the lessor of the plaintiff can make a valid lease. And his ability to do so is dependent upon his right of entry, and that rests upon the validity of his title. Hence, if the action of unlawful detainer is appropriate in all cases in which the detention is against the consent of the party having the right of entry or possession, no matter from what source it be derived, this action would be co-extensive with that of ejectment.

Could it have been the design of the legislature to vest an occasional tribunal with authority to administer one of the most intricate and difficult branches of the law ? It behooves us to be well convinced of the accuracy of our conclusions, before we should give to this statute so broad an operation.

Heretofore, in this State, the action of unlawful detainer appears to have been regarded as merely a possessory remedy, in which the title to the freehold was in nowise involved, and confined to cases where the litigants occupied the relation of landlord and tenant, with the single exception of vendor and vendee where the latter has entered under an agreement to purchase, and failing to comply with his contract, detains possession against the consent of the vendor.

The question as now presented, is one of first impression in this court; and we are referred to the case of *Allen* v. *Gibson,* 4 Rand. 468, decided under the statute of Virginia, passed in 1814, of which the statute of this State is a literal copy. That was a suit between a mortgagee and mortgagor. Allen had. mortgaged the premises in controversy to Gibson and another, by a deed which conveyed a joint estate to them. The deed contained a covenant, that the mortgagor should possess and enjoy the mortgaged premises, until default should be made in the payment of the money. Default was made; Gibson proceeded under the act; a verdict was rendered in his favor, and upon the removal of the case into the court of appeals, the judgment was affirmed.

We cannot regard this case as an authority in point. The distinction is an obvious one between the vendee at sheriff's sale and the tenant in possession, who may hold adversely to the defendant in the execution, and the relation which subsists between the mortgagee and the mortgagor. In the case cited, the mortgagor, after condition broken in reference to the mortgagee, occupied the attitude of a tenant at sufferance. *Powsely* v. *Blackman,* Croke, Jac. 659; *Moss* v. *Gallimore,* Doug. R. 279; 4 Kent, Com. 155.

It is true that the learned judge, who delivered the opinion of the court in that case, did not base his decision on the ground, that after default made in the. payment of the money, Allen became a tenant at sufferance to the mortgagee; but upon a more extended construction of the statute, by which the remedy provided by it was applicable to all cases where a party holding the right of possession was kept out by the tenant or occupant of the premises, after his right

had expired.   We cannot yield our assent to this construction.

The third section of the act provides, that, " If any shall enter or shall have entered into any lands or tenements in a case where such entry is lawful, and after the expiration of his right, shall continue to hold the same against the consent of the party entitled to the possession, the party so entitled, as tenant of the freehold, tenant for years or otherwise, shall be entitled to the like summary remedy," &c.

This language in its literal import can only be applied to cases of persons who shall have entered originally, by a title which conveys only a temporary or defeasible estate ; or to the representatives of such persons.   The form of the complaint prescribed in the statute proceeds on this idea.   It seems clearly to contemplate the redress of an injury to the possession of one who once had possession of the land or premises withheld.   The petition contains a prayer for the " restitution of the possession" to the petitioner.   This language is consistent and appropriate when applied to cases where the party seeks a restoration of the possession which he once had.   It would be otherwise if cases, where the party attempts to gain possession of land of which he never had the possession, were intended.

It is contended that the terms of the oath administered to the jury in these cases, and the form of the verdict when found in favor of the plaintiff, as well as the character of the final process which issues upon a judgment for him, indicate that the remedy by this action was designed to be applied indiscriminately to all cases where the party holding the right to the possession was kept out against his consent by the party in possession.

In cases of forcible and unlawful entry under the statute, the writ which issues upon a judgment for the plaintiff, is a *habere facias possessionem ;* although in such cases there is in fact a restitution of the possession.   The same writ issues on a judgment in an unlawful detainer.   No inference therefore can be drawn from this fact, as to the intention of the legislature.   And if there be in fact a repugnance be-

tween the third section which grants the remedy and designates the class of persons who shall be entitled to it, and those against whom it may be enforced, and the terms of the oath administered to the jury impanelled to try the issue, we apprehend that the former should govern.

If it be conceded that the remedy provided, is not limited to cases where the party in possession has originally entered under a title which gives only a temporary or defeasible estate, or where the relation between the plaintiff and defendant may .be considered in law that of landlord and tenant; but that it was designed to be applied to all cases, where the plaintiff shall assert a right to the possession against the occupant of the premises, the remedy of unlawful detainer would be as broad and comprehensive as that by ejectment; for in no case could the plaintiff be the owner of the right to the possession, unless the right of the tenant in possession, if it ever existed, had expired.

In all proceedings under the statute, if this construction be adopted, " the case," as is said in *Allen* v. *Gibson*, " would be open to the introduction of all sorts of evidence." Hence, although the issue is one in respect simply to try the right of possession, the real subject of adjudication might be the merits of the title.

Leaving out of view the injury which might result from the incapacity of a court thus constituted, to determine the intricate questions arising out of conveyances of real estate, this interpretation produces an inconsistency in the provisions of the act. It is inconsistent to assume that the court and jury shall have the right and be required to adjudicate upon the merits of the title, when the act itself expressly declares that no judgment in an action of unlawful detainer shall bar any writ of ejectment or writ of right between the same parties, and that the verdict in such cases shall not be conclusive of any fact found therein, in any action of trespass, ejectment, or writ of right between the same parties.

But if the act be construed to give merely a possessory remedy, where the subject-matter at issue is the mere naked right to the possession, these provisions seem reasonable and consistent.

The substance of the English statutes in reference to forcible entries and detainers, from 5 Rich. 2 to 21 James 1, was incorporated into the act of the Virginia legislature of 1789. This statute was remodelled by the act of 1814, of which the statute of this State on the same subjects is a copy; making it a civil remedy for the immediate recovery of possession in certain cases, even where no force had occurred.

The State of Kentucky, in framing her statute on the same subjects, appears to have followed more closely the plan of the act of 1789. 1 Stat. Laws of Kentucky, 725. It does not, however, materially differ from our own, although in terms the remedy provided by the former, applies only to cases of forcible entry and detainer, and not to unlawful detainers. For by the 16th section it is declared, that " If a tenant at will after the expiration of the will of his landlord, or other tenant after the expiration of his term in the premises, refuse to restore possession to his landlord, he shall be adjudged guilty of a forcible detainer, and may be proceeded against accordingly." And by the 17th section, any entry into lands against the will, or without the assent of the person who at the time of such entry may have the possession in fact of the premises into which such entry may be made, is declared to be a forcible entry within the meaning of the act.

In proceedings instituted under this statute, the courts of Kentucky appear uniformly to have held, that the estate or merits of the title were not the subject of investigation; but that, in these proceedings, the subject-matter at issue was the mere naked right to the possession. *Mattox* v. *Helm*, 5 Litt. 186; *Chiles* v. *Stephens*, 3 Mar. 345. So limited is the operation of the remedy given by the statute, that on the trial of issues in these proceedings, their courts hold, that title-deeds are inadmissible to prove a right of entry or of possession. They may, however, be introduced as evidence to establish boundaries, or to show the extent of possession. *Beauchamp* v. *Morris*, 4 Bibb, 312; Ib. 501.

The adjudications of the courts of Kentucky, made upon a statute similar to, and having the same objects in view with that of this State, are entitled to consideration in determining

this question; especially, as it has never been adjudicated upon in this court.

As far, however, as the decisions of this court have proceeded, in reference to this question, they are in conformity with those of Kentucky.

In the case of *Loring* v. *Willis*, 4 How. 383, this court held, that unlawful detainer was a mere possessory action in which the title of the parties to the land is not involved.

The decision in the case of *Rabe* v. *Fyler*, 10 S. & M. 441, was cited by counsel for the appellee, and relied on as a departure from the rule recognised in the preceding case. We do not so understand it. In *Rabe* v. *Fyler*, proof was introduced, showing that Rabe had held possession of the premises in controversy, as tenant of the Agricultural Bank. Fyler was the grantee of the bank, by a deed of conveyance constituting him a trustee for certain purposes, and as such had succeeded to the rights, and had taken the place, of Rabe's landlord. Hence the introduction of the deed to Fyler, in connection with proof of Rabe's attornment to him, was perfectly proper, under the circumstances. Not, however, for the purpose of proving title in Fyler, and thence deducing his right of possession; but to establish the fact, that the relation of landlord and tenant existed between them. When that relation was proved to exist, it cut off all inquiry to the title of Fyler.

The case of *Spear* v. *McKay*, Walker's R. 265, proves only that it was the understanding of the supreme court, that in certain cases a party holding the right of possession might recover in an action of unlawful detainer, although he never had possession in fact of the land. This is undoubtedly true. The case of *Rabe* v. *Fyler* is one of that character. And it is settled in Kentucky, where the statute in terms applies only to cases of landlord and tenant, where the latter holds over, that the heir, without having first reduced the premises into possession, may maintain a writ of forcible detainer against his ancestor's tenant who holds over, and refuses to deliver possession after the expiration of his lease. *Truby* v. *Foster*, 2 Mar. 205. Also wherever the person in possession entered

as tenant to those under whom the plaintiff claims, the writ of forcible detainer may be sustained for holding over. 3 Ib. 150; 1 Mon. 129.

Upon a careful and deliberate examination of the whole subject, our conclusion is, that the remedy for an unlawful detainer was never intended by the legislature to be applied to the case of a vendee at execution sale, unless the party, in possession of the premises, against whom the right is asserted, or those under whom he claims, came into the possession originally, as tenant to the defendant in the execution.

Hence the plaintiff in the court below, upon the facts admitted by the demurrer to the evidence, was not entitled to recover. The judgment will therefore be reversed, and judgment entered in this court in favor of the appellant. ·